IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EUGENE FERRI,

    Plaintiff,

v.                                             Case No. 18-cv-1012 KWR-KRS

NEW MEXICO DEPARTMENT
OF CORRECTIONS, *et al*,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    This matter is before the Court on Plaintiff Eugene Ferri's Civil Rights Complaint (Doc. 1). Ferri is incarcerated and proceeding *pro se*. He raises various constitutional claims stemming from a prison-wide property audit in 2018. Having reviewed the matter *sua sponte* under 28 U.S.C. § 1915A, the Court will dismiss the Complaint but grant leave to amend.

**I. Background**[1]

    Ferri was previously incarcerated at the Lea County Correctional Facility (LCCF). (Doc. 1 at 3). In January 2018, LCCF conducted a "facility shakedown." *Id.* at 34. The shakedown functioned like a property audit. *Id.* at 34, 112. Each inmate was required to put all property into containers and/or vacate their cell for inspection. *Id.* Prison officials conducted an inventory using a "Personal Property Matrix" created by the New Mexico Department of Corrections (NMDOC). *Id.* at 35. The Matrix placed limits on the number and type of clothing items, non-consumable goods, and consumable goods each inmate could possess. *Id.* The inmates' personal property also appeared to be limited based on the number of items that could "fit in [the cell's] designated storage

---

[1] For the limited purpose of this ruling, the Court assumes the allegations in the Complaint (Doc. 1) are true.

area," *i.e.,* a large tote. *Id.* The new policy allowed inmates to "send their property … home" if prison officials determined their personal property exceeded the limits. *Id.* at 34.

Ferri alleges the shakedown violated his constitutional rights, for several reasons. He contends the process was "not structured" and took longer than the projected timeframe of two weeks. (Doc. 1 at 113). LCCF issued conflicting directives to staff, such that prison officials made arbitrary decisions regarding which property to confiscate. *Id.* For example, Ferri cites an "arbitrary policy change[]" limiting inmates to four batteries, when they were previously allowed to have at least eight batteries. *Id.* at 8. He also contends Valderez, the commissary supervisor, limited the inmates' purchases without notice of any policy change and forced Ferri's pod to wait until the end of the day to make their commissary purchases. *Id.*

Ferri further alleges Officer Collins confiscated certain clothing items because they bore his initials, "E.F." *Id.* at 27, 130. Collins ostensibly relied on a prison policy prohibiting clothing with logos or alterations. However, Ferri argues that initials do not qualify under those definitions. *Id.* It appears Collins also confiscated other, unspecified property items and improperly accused Ferri of exceeding the limits on his designated storage tote. *Id.* at 8. The Complaint suggests Ferri may have, in fact, exceeded the space in his tote. Elsewhere in the filing, he alleges the new Matrix improperly limited inmates to one storage tote, rather than the two large totes they historically used. *Id.* at 10, 34, 37. Ferri also contends the two stacked totes functioned as a desk, and if LCCF persisted in allowing only one tote, the prison must provide desks in each cell. *Id.* at 39. In any event, even if Ferri's single storage tote was at capacity, he alleges Collins was racist, and that she allowed other, favored inmates to keep prohibited items.[2] *Id.* at 8. The allegations appear to suggest

---

[2] Ferri does not specify his race, or which groups, if any, Collins discriminated against.

2

that Collins destroyed Ferri's property, but the attachments to the Complaint indicate LCCF sent at least some of the excess items to his relative, Carol Ferri. *Id.* at 69, 70, 77, and 114.

In 2018, Ferri filed at least ten grievances and informal complaints addressing the facility shakedown. (Doc. 1 at 8-9). Most of the grievances focus on Collins, whom Ferri described as a "narcissist." *Id.* at 63. Ferri contends Commissary Supervisor Valderez and Captain Chavez tried to intimidate him into resolving the grievances, but he does not provide further details. *Id.* at 9. He also alleges that Valeriano, LCCF's grievance director, returned grievances based on technical defects, conspired with Chavez to deny relief, and otherwise "manipulated" the grievance process. *Id.* at 8-9, 119.

Based on these facts, Ferri filed a 133-page Complaint, which raises three claims under 42 U.S.C. § 1983. (Doc. 1). He contends prison officials: (Count 1) violated the due process clause through the arbitrary revocation of property; (Count 2) mishandled the grievance process; and (Count 3) violated his equal protection rights. *Id* at 112. The Complaint names nine defendants: the New Mexico Department of Corrections (NMDOC); Lea County; GEO Group, Inc., Captain Chavez; Commissary Supervisor Valderez; Property Officer Duran; Grievance Director Valeriano; Office Collins; and Mrs. Naegele. *Id.* at 1. In his prayer for relief, Plaintiff seeks at least $100,000 in damages and a mandatory injunction requiring Defendants to address his grievances and provide desks in each prison cell. *Id.* at 3.

## II. Standards Governing Initial Review of Prisoner Complaints

Under the Prison Litigation Reform Act (PLRA), federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a government entity or officer. *See* 28 U.S.C. § 1915A(a). The Court must identify any cognizable claim and dismiss any claim

which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b).  To avoid dismissal for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief about the speculative level."  *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007).  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.  A court must accept all the well-pleaded allegations of the complaint as true, and must construe the allegations in the light most favorable to the plaintiff.  *Id.* at 555.  However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed.  *Id*. at 558.

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall,* 935 F.2d at 1110.  While *pro se* pleadings are judged by the same legal standards that apply to represented litigants, the Court can overlook the "failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements."  *Id.*  However, it is not the "proper function of the district court to assume the role of advocate for the pro se litigant."  *Id.*

### III.  Screening the Complaint

The Complaint raises claims under 42 U.S.C. § 1983, which "requires the deprivation of a civil right by a 'person' acting under color of state law."  *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000).  The plaintiff must allege that each government official, through the official's own individual actions, personally violated the Constitution.  *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998).  There must also be a connection between the official conduct

4

and the constitutional violation.  *See Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046.  In addition, "a successful § 1983 complaint must make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claim against him or her."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original).

Plaintiff raises three separate constitutional violations based on the 2018 property shakedown.  The Court will address each count below.

### i. Count 1: Due Process Violations

The Complaint primarily alleges prison officials revoked Ferri's property without due process.  The Fourteenth Amendment guarantees due process "when a person is to be deprived of life, liberty, or property."  *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).  In the prison context, there are two types of property revocations that potentially implicate the Fourteenth Amendment.  The first type, which is applicable here, involves the adoption of "new polic[ies] that limit[] the amount of property prisoners c[an] keep in their cells."  *Cosco v. Uphoff*, 195 F.3d 1221, 1222 (10th Cir. 1999).  "[A] prison regulation governing what prisoners may possess in their cells will create a protected … property interest only if the deprivation … impos[es] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Robinson v. Doe*, 761 Fed. App'x 855, 857 (10th Cir. 2019) (citing *Cosco*, 195 F.3d at 1222).  The Tenth Circuit has found that policies limiting the retention of hobby materials, electronic tablets, television, radio, entertainment systems, and snacks did not impose an atypical and significant hardship on inmates.  *See Griffin v. Hickenlooper*, 549 F. App'x 823, 826 (10th Cir. 2013); *Robinson*, 761 Fed. App'x at 857; *Cosco*, 195 F.3d at 1222.

Here, the NMDOC promulgated a new policy allowing each inmate to retain, inter alia, several pairs of clothing; shoes; six to twenty pieces of paper, depending on their level; one to five pens; one large storage tote; several books and magazines; several religious items; a television; an MP3 player; and four batteries. (Doc. 1 at 35). The only concrete allegations in the Complaint demonstrate that prison officials deprived Ferri of: (i) clothing bearing his initials; (ii) a second large tote, which served as a desk; and (iii) the ability to possess 8 batteries at any given time. He also alleges they refused to provide a desk, in lieu of the second, stacked tote. Such limitations clearly do not impose an atypical or significant hardship on inmates. Further, even if the limitations were atypical, the Tenth Circuit has suggested that an inmate is "not deprived of … property" for due process purposes where, as here, he was "allowed to send the property he could not possess in prison to a place of his choosing." *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002). The new property policy explicitly allowed inmates to do so, and the attachments to the Complaint reflect Ferri sent property to his relative. (Doc. 1 at 34, 114). The Complaint therefore fails to state a due process claim based on LCCF's implementation of new property polices.

The second type of property revocation, which the Complaint may also touch upon, involves the "unauthorized intentional deprivation of property by a" prison official. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). This occurs where prison officials revoke property "in violation of, rather than according to, established procedure[s]." *Johnson v. Whitney*, 723 Fed. App'x 587, 593 (10th Cir. 2018). Such a claim is only actionable where no "meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533; *see* also *Bridgeforth v. Ramsey,* 1999 WL 992978, *1 (10th Cir. Nov. 2, 1999) ("Even if the seizure of a prisoner's property is improper, an intentional deprivation of property does not give rise to a Fourteenth Amendment due process

claim if adequate state post-deprivation remedies are available."). The plaintiff must plead specific facts showing that the state post-deprivation procedure has been unresponsive and inadequate. *See Freeman v. Department of Corrections*, 949 F.2d 360, 362 (10th Cir. 1991); *Johnson*, 723 Fed. App'x at 593.

Here, Ferri may be trying to allege that Collins went beyond the Matrix limitations and revoked certain property, such as his initialed clothing, in violation of prison procedures. However, Ferri has not raised these claims in state court, and he not alleged specific facts showing that post-deprivation procedures would be inadequate. The Complaint therefore fails to state a due process claim based on the improper, unauthorized deprivation of property by prison officials.

Finally, aside from Collins, it is not clear any other Defendants personally deprived Ferri of property. The Complaint alleges Commissary Supervisor Valderez limited his battery purchases, but it appears she did so pursuant to the new Matrix policy.[3] Defendant NMDOC enacted the offending Matrix policy, but "[NMDOC] is not a 'person' subject to suit under § 1983." *Blackburn v. Department of Corrections*, 172 F.3d 62, 63 (10th Cir. 1999). It is also worth noting that, even if the allegations could state a due process claim, and Ferri could demonstrate each Defendant was personally involved, he would likely still not be entitled to recovery. The PLRA provides that no prisoner "civil [rights] action may be brought … without a prior showing of physical injury." 42 U.S.C. § 1997(e). Accordingly, the Tenth Circuit has affirmed the dismissal of a due process claim based on the seizure of books because the prisoner did not suffer any physical injury. *See Allen v. Reynolds,* 475 Fed. App'x 280, 283 (10th Cir. 2012).

For all of these reasons, the Complaint fails to state a due process claim based on the

---

[3] Ferri also alleges Valderez served his unit last each day, but this allegation is not actionable.

revocation of property.

### ii. Count 2: Violation of the Grievance Procedures

In Count 2, Ferri alleges Chavez, Valderez, and Valeriano manipulated the grievance process to deny internal relief. Ferri frames the claim as a violation of his right to access courts under the Sixth Amendment. (Doc. 1 at 112). Such right actually implicates the First Amendment, which requires "a reasonably adequate opportunity to present claim[s] … to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). The right focuses on the "conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. Beyond demonstrating a lack of access, a § 1983 plaintiff must also "show [the issues] … prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996).

Ferri does not allege Defendants hindered his ability to pursue a legal claim in any court. Instead, he appears to believe the grievance issues will run afoul of the requirement that inmates exhaust all administrative remedies before bringing a civil rights claim. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("[E]xhaustion is mandatory under the PLRA and ... unexhausted claims cannot be brought in court."). Ferri cannot preemptively sue prison officials based on the mere possibility that they could prevail on an affirmative defense. And, in any event, the exhaustion requirement can be overlooked "where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). Any claim based on the right to access courts therefore fails.

To the extent Ferri raises a separate civil rights claim based on the defective grievance process, this argument also fails. The Tenth Circuit has repeatedly held "there is no independent

8

constitutional right to [effective] state administrative grievance procedures." *Boyd v. Werholtz*, 443 Fed. App'x 331, 332 (10th Cir. 2011) (collecting cases).[4] Ferri therefore cannot maintain a constitutional claim against Defendants for mishandling the prison grievance process. As to his allegations that Defendants violated NMDOC's grievance polices, the policies do not authorize a private right of action for such violation. *See generally Burnett v. Allbaugh,* 715 Fed. App'x 848 (10th Cir. 2017). Count 2 therefore fails to state a cognizable claim.

### iii. Count 3: Equal Protection Violation

Ferri finally contends Collins, and possibly other Defendants, violated his equal protection rights. To state an equal protection claim, Ferri must show he was "treated differently from others who were similarly situated to [him]," and that Defendants acted with discriminatory intent. *Carney v. Oklahoma Dep't of Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017); *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988). Conclusory allegations regarding different treatment will not suffice; plaintiffs must allege specific facts showing how "similarly situated individual[s]" have "been given … different or more beneficial treatment." *Straley v. Utah Bd. of Pardons,* 582 F.3d 1208, 1215 (10th Cir. 2009). *See also Abdulhaseeb v. Calbone,* 600 F.3d 1301, 1323 (10th Cir. 2010) ("vague and conclusory allegations, without any specific facts" regarding differential treatment are insufficient to support equal protection claim).

Ferri generally alleges Collins is racist. However, he does not specify either of their races;

---

[4] *See also Von Hallcy v. Clements*, 519 Fed. App'x. 521, 524 (10th Cir. 2013) (rejecting prisoner's claim that prison director violated due process by providing him with an inadequate prisoner grievance reporting system); *Merryfield v. Jordan*, 431 Fed. App'x. 743, 749-50 (10th Cir. 2011) (same); *Ciempa v. Ward*, 150 Fed. App'x. 905, 906-07, 909 (10th Cir. 2005) (same); *Anderson v. Colo. Dep't of Corr.*, 185 F.3d 873, * 2 (10th Cir. 1999) (state prisoner's § 1983 "allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner").

9

identify any inmates who received beneficial treatment; or indicate whether the unfair treatment began before or after he filed grievances calling her a "narcissist." (Doc. 1 at 63). The Complaint merely contends Collins favored certain inmates, and "it depended on you were as to what she allowed you to keep." *Id.* at 8. The Tenth Circuit has specifically held that general allegations regarding favoritism during property audits are insufficient to demonstrate an equal protection violation. *See Coburn v. Wilkinson,* 700 Fed. App'x 834, 837-38 (10th Cir. 2017) (rejecting equal protection allegation that guards would "pick [and] choose people who they want to help and not help"); *Carr v. Zwally*, 760 Fed. App'x 550, 555 (10th Cir. 2019) (rejecting inmate's general allegations of unfair treatment in a case involving deprivation of property). Count 3 therefore fails to state a cognizable claim, and the Court will dismiss the Complaint under 28 U.S.C. § 1915A.

### IV. Opportunity to Amend

In prisoner civil rights cases, Court must *sua sponte* consider whether to grant leave to amend. *Pro se* prisoners should ordinarily be given an opportunity to "remedy defects potentially attributable to their ignorance of federal law." *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). However, the Court is not required to grant leave to amend where the basis for each claim is clear, and any amendment would also be subject to dismissal under 28 U.S.C. § 1915 and Rule 12(b)(6). *Id.* Because the instant Complaint is 133 pages and somewhat difficult to discern, the Court will allow Ferri to file an amended complaint within thirty (30) days of entry of this Order. The amended complaint must comply with Fed. R. Civ. P. 8(a), which requires a short and plain statement of the grounds for relief. The Court will not sort through another lengthy, prolix complaint to discern Ferri's claims. If Ferri declines to timely file an amended complaint, or files

another pleading that fails to comply with Rule 8 and/or Rule12(b)(6), the Court will dismiss the case without further notice.

**IT IS ORDERED** that Plaintiff Eugene Ferri's civil rights complaint (Doc. 1) is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A; and Ferri may file an amended complaint within thirty (30) days of entry of this Order.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE